J-A14019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| BARTHOLOMEW PALUMBO | |
| Appellant | No. 141 EDA 2017 |

Appeal from the Judgment of Sentence June 23, 2016
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0003180-2015

BEFORE: BENDER, P.J.E., BOWES AND SHOGAN, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 17, 2017**

Bartholomew Palumbo appeals from the judgment of sentence of twelve to twenty-four years incarceration imposed following his convictions for attempted homicide, aggravated assault, terroristic threats, and recklessly endangering another person. We affirm.

On August 20, 2015, Appellant visited the home of his on-again/off-again girlfriend, Alexandra Swartz. Appellant became angry after seeing text messages between Swartz and another man. The two engaged in a verbal argument that evening. The next day, Appellant returned to Swartz's home. Appellant again brought up the messages, chastising Swartz and telling her not to talk to this man again. Swartz asked Appellant to leave; in response, he grabbed Swartz by the neck and threw her to the floor, injuring

her leg.  Appellant told her "it's going to get worse" if she called the police, and left her home.

Appellant returned to Swartz's house at approximately eleven p.m. Observing that Appellant's eyes were bloodshot, Swartz asked if he was high.  Appellant confirmed that he was, and said that he would leave. Swartz suggested that he was in no condition to drive, and watched television with him in the living room.  Appellant again brought up the text messages, and became increasingly upset.  He then punched her in the face four times with a closed fist.  Swartz felt and saw gushing blood.  Appellant stated, "See what you're making me do?" and dragged her to a door leading to the basement.  Appellant stated, "Now you're f---ing dead," and threw her down the steps.  Swartz crashed into an air conditioner unit sitting at the base of the stairs.  Appellant grabbed Swartz and dragged her to the other side of the basement, repeating that she was going to die. Appellant placed a towel in Swartz's mouth and tried to gag her.  Swartz pretended to have a seizure by shaking for approximately one minute, then stayed motionless in an effort to play dead.  Appellant backed away and said, "Oh my God, I f---ing killed her.  I'm sorry, Alex."  Appellant stayed for a minute or two, then ran upstairs and closed the door.

Swartz heard Appellant walking around upstairs.  At some point, she heard the kitchen door leading outside shut.  Swartz crawled to the steps and was able to pull herself to the kitchen.  Swartz was unaware how long

- 2 -

she stayed in the basement, but noticed it was daytime when she made it upstairs. Swartz observed Appellant outside through a window. He came back inside and exclaimed, "Oh my God, you're alive." Appellant then called 911, informing the operator that Swartz had a seizure and fell down the stairs.

City of Bethlehem police officers and emergency medical personnel arrived almost simultaneously. Officer James Smith noticed that Swartz's face was covered in blood. While paramedics tended to Swartz, Officer Smith asked Appellant what had happened. Appellant indicated that Swartz had suffered a seizure. Officer Smith then spoke to Swartz, who whispered, "He did this to me." Officer Smith arrested Appellant and escorted him outside. Appellant exclaimed, "I shouldn't have let her beat the shit out of me." Swartz was taken to the hospital where she was determined to have suffered an orbital wall fracture, a bilateral nasal fracture, and a left anterior maxillary[1] fracture.

Appellant was taken to the City of Bethlehem police department where he waived his rights and gave a statement to Detective James Ruvolo at 10:08 a.m, which was videotaped and played to the jury. In this statement, Appellant claimed that Swartz was verbally hostile, and attacked him

---

[1] The treating physician described the maxilla "as the nonmoving part of your jaw." N.T., 5/3/16, at 210.

- 3 -

multiple times that evening. He stated that Swartz injured her ankle during one of these incidents, and he applied ice to the ankle on the couch. At some point, Appellant claimed that Swartz asked to go to the basement for an unspecified reason. He assisted her to the steps, where she fell due to her ankle injury. Appellant claimed that she hit the air conditioner and had a seizure in the basement. Appellant indicated that he called 911 from the basement, and ran upstairs to let the authorities inside. Appellant denied striking Swartz.

Following a jury trial, Appellant was convicted of all charges and, on June 23, 2016, the judge imposed the aforementioned sentence. Appellant filed timely post-sentence motions, which were denied.[2] Appellant raises the following matters for our review.

> I. Whether the trial court erred in failing to conclude that the defendant is entitled to a new trial for the following reasons:
>
> > a. The trial court failed to instruct the jury on self-defense
> >
> > b. The trial court improperly admitted a graphic color photograph depicting the victim's injuries
> >
> > c. The trial court improperly denied Defendant's Motion for Mistrial, and
> >
> > d. The improper statements by the attorney for the Commonwealth during her closing?

---

[2] The post-sentence motion was docketed July 5, 2016. The tenth day was Sunday, July 3, 2016. Monday was the Fourth of July holiday. Therefore, the post-sentence motion was timely.

II. Whether the trial court erred in failing to conclude that the maximum possible sentence given by the court was unreasonable and excessive given the number of mitigating factors, including defendant's minimal prior record, and the lack of aggravating factors?

Appellant's brief at 3.

Appellant first claims that the trial court erred in failing to issue an instruction for self-defense. This contention is largely based upon Appellant's testimony at trial, which we briefly review. Appellant repeated the statement he gave to detectives in many respects, including the allegation that Swartz was the aggressor. However, he added that when the two were sitting on the couch, he informed Swartz he would not see her again due to her physical attacks, verbal abuse, and drug use. He told her that she was an addict and an unfit mother. Appellant related what happened next:

> And I should not have said that. It was stupid of me, number one, and it was rude, but it was the truth. And she went nuts. Absolutely nuts.
>
> Q. What do you mean by that?
>
> A. She hopped right on top of me and just starts throwing punches, scratch[ing], anything you can think of, she's throwing at me.
>
> Q. And what were you doing?
>
> A. I went like this. As soon as she comes at me, I just went like this. As she's coming forward, we go 50/50. She's coming at me. I'm like this. She goes right into my forearm. I kid you not, she goes right into my forearm.

Her—she cracks her nose. . . .

N.T., 5/4/16, at 71. Appellant claimed that he intended to take Swartz to the hospital to treat her broken nose. However, she continued her attack and accidentally fell down the steps in the process:

> . . . . And we're right by the stairs. I run and she's still, like, on me, like, trying to pull me down, trying to hit me. And I'm just like, stop. And we go down the stairs.
>
> We're like – I grab the railing. She's – she's on me and I'm holding the railing. She just obviously, like, lets go because she is falling and she's holding onto me for support. So she goes down. She goes down, like, seven stairs.

*Id*. at 74. Appellant maintained that Swartz hit the air conditioner at the bottom of the steps and had a seizure. On cross-examination, Appellant attributed the inconsistencies between his testimony and his police statement to sleep deprivation, hunger, shock, and fatigue. "I was not in the proper state of mind . . . I was up 30 hours and I was in total shock when I heard the word homicide. I mean, that just blew me away. I could not process that. I was in full panic attack mode." *Id*. at 91.

Appellant asserts that the trial court erred when it denied his request for a self-defense instruction, arguing his "entire defense was based on the claim that he was attacked by Alexandra Swartz and that her injuries occurred when [Appellant] raised his arms in self-defense and Ms. Swartz's face made contact with [Appellant]'s forearm and elbow." Appellant's brief at 17.

It is well-settled that "[i]f a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." *Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011) (citation omitted). "A jury charge on self-defense must be given upon request in a criminal prosecution where the jury would have possible basis for it." *Commonwealth v. La*, 640 A.2d 1336, 1346 (Pa.Super. 1994) (citation omitted). We find no error, as the jury would have no possible basis to find self-defense.

Self-defense is defined by statute. "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). As is evident from this language, a claim of self-defense necessarily entails using force. While the passive act of raising one's arms to prevent blows constitutes self-defense in a colloquial sense, we hold that it does not qualify as such in the legal sense.

In support of his claim, Appellant relies upon *Commonwealth v. Mayfield*, 585 A.2d 1069 (Pa.Super. 1991) (*en banc*), and *Commonwealth v. McFadden*, 587 A.2d 740 (Pa.Super. 1991), a case applying *Mayfield*. We examine each in turn. In *Mayfield*, this Court found that the trial court erroneously failed to issue a self-defense instruction. Therein, the testimony presented by the prosecution and the defendant, as here, substantially

differed. The parties agreed that the victim, John Maurer, was driving his vehicle down a narrow road and was unable to pass another vehicle, driven by Ernest Miller, traveling in the opposite direction. The Commonwealth's version established that Maurer, frustrated with the situation, approached Miller, which resulted in a verbal altercation. *Id*. at 1075-76. Mayfield exited Miller's vehicle during the dispute and struck the victim. Following a scuffle, Mayfield pulled out a knife, lunged at Maurer, and stabbed him in the chest. *Id*. at 1076.

Mayfield, on the other hand, claimed that Maurer forcibly pulled him from the vehicle. Mayfield agreed that he pulled out a knife, but stated he did so to defend himself. Significantly, Mayfield explicitly denied stabbing the victim. *Id*. The trial court refused to issue a self-defense instruction. The Commonwealth asked this Court to affirm on the theory that Mayfield's failure to concede that he actually stabbed the victim precluded any finding of self-defense.

We disagreed. The ***Mayfield*** Court agreed that refusing to admit using force would preclude a self-defense claim, but differentiated the denial of employment of force from a denial of causation.

> [W]e do not find that appellant has denied the use of deadly force, but merely has denied causing the injury to Maurer once he pulled his knife. Under the Commonwealth's theory, even if appellant had testified that in defense of himself he lunged at Maurer with the full intent to cause injury but did not know that he in fact hit his mark, he still would not be entitled to a charge on self-defense because he did not admit the actual injury.

> However, such an argument ignores that it was not the injury to the victim that the jury was instructed to focus on, but rather the actions or conduct of appellant which led to the injury,—that is his use of deadly force. We find appellant's testimony that he pulled the knife in preparation to use it against the victim in defense of himself to be a sufficient showing of a use of deadly force to at least put the question of self-defense before the jury.

*Id*. at 1077. We ordered a new trial for the failure to issue the instruction.

Likewise, in **McFadden**, **supra** we determined that a victim's denial of intentional causation did not preclude a self-defense instruction. Therein, Linda McFadden was convicted of aggravated assault for shooting her ex-husband. McFadden testified that the victim attacked her and grabbed a gun that was in the room. McFadden stated that she also grabbed the gun, and, in the ensuing struggle, she obtained possession of the firearm and discharged it. However, she denied intentionally shooting the victim, instead stating that her hands may have slipped. *Id*. at 744. Applying **Mayfield**, we held that, accidental injury notwithstanding, McFadden was entitled to a self-defense charge.[3]

Appellant claims that the same principles applied to his conviction, in that his refusal to admit that he caused the injury did not preclude a self-defense instruction. We find that both cases are distinguishable. **Mayfield**

---

[3] Technically, the panel concluded that there was arguable merit to a claim that counsel was ineffective for failing to request that instruction, and remanded for a hearing regarding whether counsel had a basis for failing to request it.

noted that merely wielding a knife is in itself the use of deadly force. ***Id***. (citing ***Commonwealth v. Jones***, 332 A.2d 464 (Pa.Super. 1974)). ***Mayfield*** discussed ***Commonwealth v. Gonzalez***, 483 A.2d 902 (Pa.Super. 1984), which held that an admission by the defendant that he pointed a gun was sufficient to constitute self-defense even though he denied that he attempted to fire the weapon. In ***Gonzalez***, the gun never fired and therefore the crime did not involve actual injury. ***Gonzalez*** distinguished that situation from cases in which a self-defense instruction was properly refused for failing to concede injury:

> First, we note that in ***Powers*** and ***Gray***, *supra,* the defendants were trying to raise inconsistent defenses. In those cases, the defendants maintained that they did not participate in the stabbings, yet they requested a charge on self-defense. The Appellant in this case differs because he *does admit* that he held a gun pointed at the officers. While Appellant denies that he attempted to shoot the revolver, the mere act of pointing a gun at an individual is sufficient conduct to constitute an assault.

***Id.*** at 904 (citations omitted). Applying ***Gonzalez***, we concluded that the mere fact Mayfield pulled a knife was itself legally significant as a use of force.

Here, however, Appellant explicitly denied using any force whatsoever. His purported act of self-defense was purely passive. By definition, Appellant did not concede "us[ing] . . . force upon or toward" Swartz. ***See*** 18 Pa.C.S. § 505(a). Accepting Appellant's version of events as true, the injuries sustained by Swartz were accidental or self-inflicted, and, if so,

there was no use of force that required legal justification. **McFadden** is likewise distinguishable, as therein the defendant did not deny that she caused the injury by firing the gun, *i.e.* she agreed that the gun was the force that caused the injury. Thus, while a self-defense instruction may be issued even where the injuries are said to be accidental, the key in **McFadden** was that the defendant agreed with the prosecution regarding **how** the injuries occurred. Herein, Appellant presented an alternative scenario that was entirely incompatible with Swartz's testimony and did not involve any active use of force. As our Supreme Court explained in **Commonwealth v. Harris**, 665 A.2d 1172 (Pa. 1995), in such circumstances "a defense of self-defense . . . is mutually exclusive of the defense of accident or mistake." **Id**. at 1175. Therefore, the trial court properly refused to issue the self-defense instruction.

Appellant's next issue involves the admission of a color photograph depicting the victim's injuries. This photograph was taken by Officer Emily Falko while Swartz was in the ambulance awaiting transport to the hospital. The picture shows Swartz's face covered in blood. Appellant lodged an objection, complaining that the photograph was inflammatory.

We employ an abuse of discretion standard in reviewing the admission of photographs. **Commonwealth v. Haney**, 131 A.3d 24, 37 (Pa. 2015). A trial court must determine if the photograph is inflammatory, and, if so, whether the photograph has essential evidentiary value. **See**

- 11 -

*Commonwealth v. Funk*, 29 A.3d 28, 33 (Pa.Super. 2011) (*en banc*). "This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant." *Id*. (citation omitted). We have reviewed the photograph and find that it does not meet this standard. "The fact that blood is visible does not necessarily require a finding that a photograph is inflammatory." *Commonwealth v. Lewis*, 567 A.2d 1376, 1382 (Pa. 1989). Herein, the depiction of blood is not gruesome and would not tend to cloud the jury's objective assessment.

Moreover, even if this photograph were inflammatory, it had essential evidentiary value. As the Commonwealth observed at trial, the other pictures published to the jury were taken after Swartz had been treated and cleaned. Thus, the photo was necessary for the jury to properly evaluate Appellant's claim that Swartz inflicted the injuries upon herself by running into his hands and elbow.

We next address Appellant's claim that the trial court improperly denied his request for a mistrial following prejudicial comments made by Appellant's brother, David Palumbo, who testified in Appellant's defense. Specifically, on cross-examination, Mr. Palumbo indicated that Appellant was previously on house arrest.

Q. And the whole time you're just in your room though?

A. Yeah.

Q. But you know what he's doing around the rest of the house though; right?

A. He was at home for about six months on house arrest, this past year and half. Like—

Q. Okay. That's not what I'm asking you. I'm asking you on August 21st.

N.T., 5/4/16, at 138-39.

Appellant moved for a mistrial at sidebar, which the trial court denied. Appellant declined the trial court's offer to issue a cautionary instruction. We begin by noting our standard of review.

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Brooker*, 103 A.3d 325, 332 (Pa.Super. 2014). We find no abuse of discretion. In the context of mistrials based on references to prior criminal activity, we have observed:

> The admission of testimony from which a jury could infer past criminal conduct has been held to be reversible error. Reversal is not warranted, however, unless the record indicates that prejudice resulted from the testimony. Mere "passing references" to criminal activity do not necessitate the granting of a mistrial unless prejudice results from the reference.

- 13 -

*Commonwealth v. Bruner*, 564 A.2d 1277, 1287 (Pa.Super. 1989) (citations omitted). The challenged reference was passing in nature and was not prejudicial. As the trial judge indicated, the jury may well have simply assumed that Appellant was on house arrest as a condition of bail for the instant crimes, and therefore did not refer to past conduct. Additionally, this reference would not prejudice the jury. *See Commonwealth v. Morris*, 519 A.2d 374, 378 (Pa. 1986) (allusion to prior crime of carrying a firearm without a permit "is not of such a heinous nature as to highly inflame a jury."). Moreover, the remark was made by Appellant's brother and was non-responsive to the prosecutor's question. "The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Valerio*, 712 A.2d 301, 303 (Pa.Super. 1998) (quoting *Commonwealth v. Coburn*, 485 A.2d 502 (Pa.Super. 1984)). Accordingly, we find no abuse of discretion.

Appellant's fourth claim is that he should have been granted a new trial because the prosecutor made improper statements during her closing. This claim has been waived, as Appellant did not object to the comments. "[Stafford] also argues that the prosecutor made improper reference to Mr. Weisbrod's testimony about prior drug use in his closing argument. Because he made no objection to these remarks at that time, we deem any error

made waived." ***Commonwealth v. Stafford***, 749 A.2d 489, 496, n.5 (Pa.Super. 2000).

In an attempt to avoid waiver, Appellant claims that the trial court should have declared a mistrial on its own. "The arguments of counsel for the Commonwealth were so clearly improper that the Court should have acted *sua sponte* and declared a mistrial, or at the very least given a cautionary instruction." Appellant's brief at 26.

Appellant reaches this conclusion by citing cases discussing the trial court's power to declare a mistrial *sua sponte*, even over objections by the defendant, due to manifest necessity. A trial judge's power to do so is well-settled, and, where manifest necessity existed, the Commonwealth is not barred from retrying the defendant. ***See Commonwealth v. Morris***, 773 A.2d 192, 194 (Pa.Super. 2001). However, manifest necessity precedents involve appellate review of whether the trial court's exercise of that power was proper; the cases do not set forth standards for when that power should be employed in the first place.

Appellant's failure to appreciate the distinction between these two concepts is evident from his statement that, "[I]t is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant." Appellant's brief at 27. Although this recitation is correct, it means that any doubt must be resolved in favor of a finding that manifest necessity did **not** justify the mistrial, not that a trial judge should

somehow err on the side of liberally declaring mistrials *sua sponte*. Our adversarial system properly places the burden to act on Appellant, who could have requested a mistrial. He did not, and this claim was therefore waived.

Appellant's final issue asserts that the sentence was unreasonable and excessive given the number of mitigating factors. This claim involves the discretionary aspects of his sentence, and appellate review of these claims is by permission. To determine if Appellant has invoked our jurisdiction, we examine the following four criteria:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. McLaine***, 150 A.3d 70, 76 (Pa.Super. 2016) (citing ***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa.Super. 2014)).

Appellant filed a timely notice of appeal and preserved the issue in a post-sentence motion. He has also presented a substantial question, as he argues that the trial court imposed the sentence due solely to the gravity of the offense. ***Commonwealth v. Clarke***, 70 A.3d 1281, 1287 (Pa.Super. 2013) (allegation that trial court focused solely on the nature of the offense presented a substantial question). However, the Commonwealth asks us to find that the claim is waived, because Appellant's brief is defective due to a failure to strictly comply with Pa.R.A.P. 2119(f), which states:

**(f) Discretionary aspects of sentence.** An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence.

Pa.R.A.P. 2119(f).  **See also** Pa.R.A.P. 2111(a) (the statement of reasons to allow appeal of discretionary aspects of sentence shall be distinctly entitled and precede argument).

We agree that the brief is defective since the Rule 2119(f) statement is not separately titled nor does the statement immediately precede argument. "Where an appellant fails to comply with Pa.R.A.P. 2119(f) and the Commonwealth objects, the issue is waived for purposes of review." **Commonwealth v. Montgomery**, 861 A.2d 304, 308 (Pa.Super. 2004). However, the third prong of our permissive appeal scheme refers to fatal defects.  While Appellant's brief does not strictly comply with the Rules of Appellate Procedure, we do not find that the defects are fatal as our ability to review the claim has not been impeded.  Appellant's brief references Rule 2119(f), sets forth a substantial question, and properly separates that discussion from the merits of his claim.  Thus, we proceed to examine the merits of Appellant's claim.

Turning to this issue, we conclude that Appellant's contention is groundless.  His assertion that the trial court imposed a sentence due solely to the gravity of the offense is supported by attacking the sufficiency of the

evidence. "While the jury found that the offenses involved serious bodily injury, the evidence related to same would suggest otherwise." Appellant's brief at 30. The trial court obviously had no authority to override the jury's verdict, and Appellant does not claim the trial court utilized improper guidelines. Appellant was convicted of attempted homicide and his sentence was within the standard range, which the law views as appropriate under the Sentencing Code. **Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa.Super. 2010). "In reviewing a challenge to the discretionary aspects of sentencing, we evaluate the court's decision under an abuse of discretion standard." **Commonwealth v. Seagraves**, 103 A.3d 839, 842 (Pa.Super. 2014) (quoting **Commonwealth v. Dodge**, 77 A.3d 1263, 1274 (Pa.Super. 2013)). Since Appellant makes no other attempt to challenge the appropriateness of this sentence, we find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2017